Cordy, J.
(concurring in part and in the judgment). I agree that the evidence regarding whether the defendant was the driver of the Dodge Caravan minivan that transported and dropped off four individuals (at least two of whom were armed with firearms) across the street from the victim’s parked minivan, where seconds later they murdered him, may not have been sufficient to allow a rational jury to conclude that fact beyond a reasonable doubt. Consequently, I concur in the reversal of her conviction. I disagree, however, with the court’s further and unnecessary conclusion, that even were the evidence adequate on that point, there was not a sufficient basis on which the jury could infer that she shared the murderous intent of her passengers.[1]
In my view, the evidence at trial firmly established an intense animosity between the defendant and her boy friend (one of the *419 shooters) and the victim, an animosity that was in part related to money owed to the defendant by the victim — a debt that was overdue and contentious, and that had been the subject of “loud conversation” between the boy friend and the victim on the day of the shooting. Indeed, on that same day, the defendant and her boy friend had at least four hostile encounters with the victim. At approximately 2 a.m., the victim knocked the boy friend’s tooth out in a fight in the presence of the defendant. The boy friend pulled out a knife during the fight, and after getting punched and losing his tooth, threw his cellular telephone at the victim. He then told the defendant that it “was not going to stay like that,” after which he drove away. Later that day, while the defendant was driving her boy friend around, the victim drove his minivan head on toward her in an attempt to drive her vehicle off the road. Still later that afternoon, the victim showed up at the boy friend’s house and taunted the defendant and the boy friend’s mother — saying he was “carrying [her boy friend’s] tooth” and would sell it back “for a hundred bucks.”
This obviously did not sit well with either the boy friend or the defendant, and between 2 p.m. and 5:30 p.m., six calls were made on the defendant’s cellular telephone to Yoshio Stackermann to round up some friends. Between 5:41 p.m. and 5:57 p.m., the defendant (assuming it was she) was driving the boy friend and his three-man posse (in her mother’s vehicle) in search of the victim. When they observed him in his parked vehicle, the defendant stopped the vehicle across the street. The four passengers jumped out and within seconds fired at least twelve shots at the victim and his vehicle, killing him. They then fled on foot. The defendant drove around the block, picked up her boy friend, and proceeded on to her brother’s girl friend’s house where they had planned to visit.
In sum, if the evidence had been sufficient to establish her role as the driver, it would have been sufficient to establish her role as a joint venturer in the murder plot.

 I am aware that, of the four defendants charged in this murder, only two were convicted: Joel Javier (murder in the first degree) and Yoshio Stackermann (murder in the second degree).